**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES BURRESS, on behalf of himself and the putative class,<br><br>Plaintiff,<br><br>v.<br><br>FREEDOM MORTGAGE CORPORATION, a New Jersey corporation,<br><br>Defendant. | No. 1:20-cv-15242-NLH-AMD<br><br><br><br>**OPINION** |

**APPEARANCES**:

DAVID J. DISABATO, ESQ.
LISA R. CONSIDINE, ESQ.
DISABATO & CONSIDINE LLC
P.O. BOX 370
RUTHERFORD, NJ 07070

ROBERT MURPHY, ESQ. (admitted *pro hac vice*)
MURPHY LAW FIRM
1212 SE 2ND AVENUE
FORT LAUDERDALE, FL 33316

   *On behalf of Plaintiff*

JOSHUA N. HOWLEY, ESQ.
MARK E. DUCKSTEIN, ESQ.
SILLS CUMMIS & GROSS P.C.
ONE RIVERFRONT PLAZA
NEWARK, NJ 07102

   *On behalf of Defendant*

**HILLMAN**, **District Judge**

This matter comes before the Court by way of Defendant's Motion for Reconsideration on Motion for Summary Judgment (ECF No. 61), Defendant's Motion to Dismiss for Lack of Article III Standing, or Alternatively for Permission to Seek Leave to Appeal to the Third Circuit (ECF No. 70), and Defendant's Motion to Seal (ECF 86). Pursuant to Federal Rule of Civil Procedure 78, the Court decides the present motions on the briefs, without oral hearings.

For the below reasons, Defendant's Motion for Reconsideration will be dismissed as moot, Defendant's Motion to Dismiss will be granted in part and denied in part as moot, and Defendant's Motion to Seal will be granted.

## DISCUSSION

This matter revolves around the mortgage statements sent to Plaintiff Jesse Burress by Defendant Freedom Mortgage Corporation ("Freedom") between March and November of 2019 which showed various mismatched amounts owed to Freedom. (ECF No. 56 at 2-3). According to Defendant, the mismatched amounts were due to underpayments by Plaintiff in February and March of 2019, and the recoupment of the underpaid amounts over the next several months led to the inconsistencies of the amount due on Plaintiff's later statements. (Id.).

Plaintiff requested an explanation for the inconsistencies

on June 8, 2020, and Defendant responded via letter dated July 13, 2020.  (Id.).  Plaintiff filed suit on October 30, 2020 based on the last mismatched statement dated November 1, 2019 alleging that Defendant violated 15 U.S.C. § 1638(f) of the Truth In Lending Act ("TILA"), which requires lenders and services to provide customers with accurate periodic statements.  (Id.).

This Court previously denied Defendant's Motion for Summary Judgment which had sought to dismiss Plaintiff's TILA claim as barred by the statute of limitations.  (ECF No. 56).  The Court found that the nature of the discrepancy, in that the amount due varied in two locations on each statement month to month made each statement a separate "occurrence" of a TILA violation and that the Plaintiff received "notice" with each statement.  (Id. at 23).  Because Plaintiff filed within one year of his receipt of the last statement which had the discrepancy, the claim survived Defendant's Motion for Summary Judgment.  (Id.).

Defendants have since filed a Motion for Reconsideration (ECF No. 61), a Motion to Dismiss for Lack of Article III Standing or Alternatively for Permission to Seek Leave to Appeal to the Third Circuit (ECF No. 70), and a Motion to Seal (ECF No. 86), along with several letters regarding additional case law relating to Defendant's Motion to Dismiss.  (ECF Nos. 96, 97, 98, 99, and 100).

### i. Jurisdiction

As Plaintiff alleges a violation of a federal statute, the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

### ii. Standard for Motion to Dismiss[1]

Defendant alleges that Plaintiff lacks Article III standing because he has not suffered a concrete and particularized injury, but rather a bare procedural violation of the TILA. (ECF No. 61 at 1).  A motion to dismiss for lack of standing is governed by Fed. R. Civ. P. 12(b)(1).  "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "A court ruling on a facial attack considers only the complaint, viewing it in the light most favorable to the plaintiff.  A factual attack, in which the defendant contests the truth of the jurisdictional allegations, is a

---

[1] The Court acknowledges receipt of four letters requesting and opposing Judicial Notice of several additional cases from outside this Circuit.  (ECF Nos. 96, 97, 98, 99, and 100).  On a motion to dismiss a court may consider matters of public record, including another court's opinion, without converting the motion to one for summary judgment pursuant to Fed. R. Civ. P. 12(d). Korotki v. Levenson, No. 20-11050, 2021 WL 2650775, at *3 (D.N.J. Jun. 28, 2021) (citing Holmes v. Christie, No. 16-1434, 2018 WL 6522922, at *1 n.1 (D.N.J. Dec. 12, 2018) *vacated* in part on other grounds and *aff'd* in part (quoting Johnson v. Pugh, No. 11-0385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013)).  The Court has reviewed these submissions and notes that as these cases are from outside of the Third Circuit they are not binding authority but can be seen as persuasive authority.

different matter: the court need not treat the allegations as true[.]" Long v. SEPTA, 903 F.3d 312, 320 (3d Cir. 2018) (internal citations omitted). A factual challenge attacks the allegations underlying the complaint's assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'" Davis, 824 F.3d at 346 (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)). Under this test, Defendant's allegations raise a factual attack as it follows an answer and presents additional facts outside the pleadings. Long, 903 F.3d at 320.

A factual attack's standard of review engenders "no presumptive truthfulness [] to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims," and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A Rule 12(b)(1) factual attack "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed" because a "factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted[.]" Id. at 895 n.22.

There are three elements that Plaintiffs must meet to satisfy Article III standing. First, there must be an "injury

5

in fact," or an "invasion of a legally protected interest" that is "concrete and particularized."  In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  Second, there must be a "causal connection between the injury and the conduct complained of[.]"  Id.  Third, there must be a likelihood "that the injury will be redressed by a favorable decision."  Id.

### iii. The Supreme Court's decision in TransUnion v. Ramirez Controls

Defendant argues that there is no causal connection between the "injuries" as alleged in the Amended Complaint (ECF No. 9 at ¶¶ 44-46) and the complained of statutory violation, and without the $15 late fee assessed against the account and without the alleged underfunded payments reported to credit agencies, Plaintiff does not have Article III standing for the remaining "bare" statutory violation.  (ECF No. 70 at 1).

Defendants are correct.  The issue of injury-in-fact requiring more than a technical statutory violation was discussed extensively in TransUnion v. Ramirez. 141 S. Ct. 2190, 2205 (2021).  In that case over eight thousand individuals sued TransUnion, a credit reporting agency, in federal court under the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b), claiming that the company failed to use reasonable procedures to ensure

6

the accuracy of their credit files, whereby some of the class members had misleading credit reports sent to third-party businesses and some solely had misleading credit reports maintained, but not disseminated, by TransUnion.  Id. at 2200.  All class members raised an issue about formatting defects in the mailings sent to them by TransUnion.  Id.  The FCRA imposes requirements on the creation and use of consumer reports and created a cause of action for consumers to sue and recover damages for certain violations.  Id. at 2220-01.

In 2002 TransUnion designed a product called the OFAC Name Screen Alert, whereby during a credit check of a consumer, TransUnion would use third-party software to compare the consumer's name to the Office of Foreign Asset Control list, (which tracks "specially designated nationals" who purportedly threaten America's national security) and place an "alert" on the credit report if the consumer's name came up on the OFAC list.  Id.  Because individuals who are placed on the OFAC list are usually serious criminals, it is unlawful to transact business with any person listed.  31 CFR pt. 501, App. A (2020).  TransUnion did not do any additional due diligence aside from matching first and last names with the OFAC list, which generated many false positives and labelling these consumer's credit reports as a "potential match" to individuals on the OFAC list.  Id. at 2201-02.

7

While the Supreme Court agreed with the Ninth Circuit that the 1,853 class members who had these mislabeled reports shared to others had standing to pursue their claims based on reputational harm, the Court disagreed that the 6,332 class members who did not have their mislabeled reports disseminated had Article III standing to recover because those class members did not suffer a concrete injury. Id. at 2202.

The Supreme Court's analysis noted that, while all 6,332 class members had misleading OFAC alerts appended to their credit reports, none of those reports were disseminated to any potential creditors during the class period. Id. at 2209. Dissemination of these reports is akin to the need for publication in a defamation suit: the "mere presence" of the inaccuracy in an internal file does not cause a concrete harm. Id. at 2210. Moreover, the risk of future harm, the future dissemination to third parties, was too speculative to support Article III standing. Id. at 2212. With regards to the plaintiffs' claims regarding the formatting errors of TransUnion's mailings depriving them of their right to receive information in the format required by the statute, the Court found that the receipt of the mis-formatted mailings themselves did not suffice and that plaintiffs were required to demonstrate that the format of the mailings caused them harm in a way that closely relates to harms traditionally recognized as sufficient

8

for standing such as physical, monetary or reputational harm. Id. at 2213.  Even though the Court has recognized "informational injury" in other cases, this conception of injury did not apply in TransUnion because the information the plaintiffs failed to receive was not "required information," the case did not involve public-disclosure laws, and the plaintiffs failed to identify "downstream consequences" from TransUnion's formatting error.  Id. at 2214.

TransUnion held that "Congress may create causes of action for plaintiffs to sue defendants[, but] under Article III, an injury in law is not an injury in fact.  Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 2205.  Concreteness is determined by whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts.  Id. citing Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016).  Some intangible harms may also qualify as sufficiently concrete, such as reputational harms, invasions of privacy, and infringements of fundamental rights.  TransUnion, 141 S. Ct. at 2240.  "An asserted informational injury that causes no adverse effects cannot satisfy Article III."  Id. at 2214 (internal quotation and citation omitted).

The Third Circuit has advised that a "thorough discussion

9

of concreteness is necessary in order for a court to determine whether there has been an injury-in-fact" in light of the Supreme Court's clarification that, in cases of statutory violations, a court must ensure that the harm is more than just a "bare procedural violation." Vaughan v. Fein, Such, Kahn & Shepard, P.C., No. 21-16013, 2022 U.S. Dist. LEXIS 112024, at *7 (D.N.J. Jun. 24, 2022) (citing Spokeo, 578 U.S. 341; Bock v. Pressler & Pressler, LLP, 658 F. App'x 63, 65 (3d Cir. 2016)).

Here, Plaintiff certainly suffered an injury-in-law in that a TILA violation is a statutory harm created by Congress. See 5 U.S.C. § 1638(f). Originally, the Amended Complaint alleged that Plaintiff had suffered a late fee and negative credit reporting, which are injuries-in-fact commonly recognized as concrete harms in American courts. (ECF No. 9 at ¶¶ 45, 46). However, Defendant's proffered Declaration of Tanya Tarver, a manager employed at Freedom Mortgage Company, Inc., attests that, with respect to the violative statements, no fees were charged against Plaintiff and that Plaintiff was not reported to any credit reporting agencies as a result of the arrearages that were incurred due to the violative statements. (ECF No. 82-1 at ¶ 20); see also (ECF No 88 at 4,7). These facts reflect the same disconnect between the injury-in-law (the statements that violated TILA) and the injury-in-fact (the concrete monetary and reputational injuries of penalty fees and negative credit

reporting) as the 6,332 plaintiffs in TransUnion who had erroneous OFAC alerts placed on their credit reports without those reports being disseminated to an outside party. Without more, there is no direct causal connection between the TILA violation (the mismatched statements) and any injury-in-fact. Additionally, Plaintiff has not established that there are any anticipated or realized "downstream consequences" due to the violative statements. In short, Plaintiff has suffered no monetary, reputational, or any other form of concrete harm that is in "close relationship" with the traditional harms recognized as providing a basis for Article III standing. TransUnion, 141 S. Ct. at 2204.

Plaintiff argues that cost incurred to pursue these claims should be considered as injuries-in-fact, but these costs are not considered sufficient harm to confer standing. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021); see also Summers v. Earth Island Inst., 55 U.S. 488, 496, (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing[.]"); St. Amour v. Fed. Home Loan Mortg. Corp., No. 18-254, 2019 WL 1453055, at *2 (D.R.I. Apr. 2, 2019) ("The Complaint's sole damages alleged pertain to costs and fees incurred by Plaintiffs in meeting and conferring with their attorneys and bringing this action. . . . [T]hey are not a

11

substitute for the injury-in-fact required by Spokeo.") (internal quotations and citation omitted); Viera v. Bank of N.Y. Mellon, No. 17-0523, 2018 U.S. Dist. LEXIS 176276, at *11 (D.R.I. Oct. 12, 2018); ("Moreover, Plaintiff seeks damages only for the costs he has incurred in prosecuting the RIFDCPA claim and attorney's fees.  While these damages would be recoverable if Plaintiff had successfully established a RIFDCPA violation . . . they are not a substitute for the injury-in-fact requirement developed in Spokeo.") (citing Pemental v. Bank of New York Mellon for Holders of Certificates, First Horizon Mortg. Pass-Through Certificates Series FHAMS 2004-AA5, No. 16-483S, 2017 WL 3279015, at *8 (D.R.I. May 10, 2017), report and recommendation adopted sub nom. Pemental v. Bank of New York Mellon, No. CV 16-483 S, 2017 WL 3278872 (D.R.I. Aug. 1, 2017)).

    Such costs are a self-inflicted wound.  The pursuit of any mere statutory violation would entail some costs.  If such costs justified Article III standing, then every plaintiff pursuing a federal lawsuit would have Article III standing.  The exception would swallow the rule and the holding in TransUnion would be rendered meaningless.  Ultimately, without a concrete injury directly traceable to the violative statements, Plaintiff has failed to show the requisite standing to survive Defendant's Motion to Dismiss.

    The Motion to Dismiss on Article III standing will be

12

granted, and to the extent the motion seeks, in the alternative, leave to appeal to the Third Circuit, it will be dismissed as moot.[2]

**Standard for Motion to Seal**

Local Civil Rule 5.3 has several requirements that the Parties must address in a joint motion for a court in this District to restrict public access to court documents:

> (a) the nature of materials or the proceedings at issue;
> (b) the legitimate private or public interest which warrants the relief sought;
> (c) the clearly defined and serious injury that would result of the relief sought is not granted;
> (d) why a less restrictive alternative to the relief sought is not available;
> (e) any prior order sealing the same materials in the pending action; and
> (f) the identity of any party or nonparty known to be objecting to the sealing request.

L. Civ. R. 5.3(c)(2).  The party moving to seal must submit a proposed order that contains proposed findings of fact and conclusions of law.  Id.

While litigants have an interest in privacy, the public has a right to obtain information about judicial proceedings.  In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 924 F.3d

---

[2] The Motion for Reconsideration is also moot because standing is a jurisdictional defect and because Plaintiff does not satisfy the standing requirements for its remaining TILA claim "the court lacks jurisdiction to hear the case" and "a fortiori it lacks jurisdiction to rule on the merits" with regards to the Motion for Reconsideration.  Mortensen, 549 F.2d at 895 n.22.

13

662, 670-74 (3d Cir. 2019). When discovery materials are filed as court documents, a more rigorous common law right of access applies. Id. at 670. "In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access — unlike a Rule 26 inquiry — begins with a presumption in favor of public access." Id.

To rebut the presumption of public access, the party seeking confidentiality must show "good cause" by establishing that disclosure will cause a "'clearly defined and serious injury to the party seeking closure.'" Boehringer Ingelheim Pharma GmbH & Co. v. Mylan Pharms., No. 14-4727, 2015 WL 4715307, at *2 (D.N.J. Aug. 7, 2015) (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." Id. (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986), cert. denied, 484 U.S. 976 (1987)).

Here, the parties did not follow the requirements of Local Civil Rule 5.3, (ECF No. 86), but the Court has inherent equitable power to grant orders to protect confidential information and privacy interests. Casey v. Unitek Global Servs., No. 14-2671, 2015 WL 539623, at *23 (E.D. Pa Feb. 9, 2015) (citing to Pansy v. Borough of Stroudsburg, 23 F.3d 772,

785 (3d Cir. 1994)).  A personal, private account number to a still-active mortgage is analogous to confidential information such as social security numbers, and can be identified as the kind of confidential, sensitive personal information courts generally protect.  See Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994).  The Court notes that the request is narrowly tailored to the extent that Defendant requests sealing the unredacted copies of the Tarver Declarations.  (ECF Nos. 6-3, 61-2, 61-3, 82-1, 82-2).

The Court acknowledges that public access to an active mortgage account number would result in serious harm to Plaintiff and that prior declarations have had this information redacted.  There is no known objection to this request to seal.  Because the Defendant has filed unsealed redacted copies of these declarations, (ECF No. 85) the Court finds that the balance between the public interest in access to court materials has been sufficiently preserved and will grant Defendant's motion that the unredacted records identified above be sealed despite the procedural deficiencies.

## **CONCLUSION**

For the foregoing reasons Defendant's Motion to Dismiss will be granted insofar as the Plaintiff has failed to show the requisite Article III standing to pursue his TILA claim and insofar as the Motion to Dismiss argued in the alternative for

Appellate Review, it will be dismissed as moot.  Defendant's Motion for Reconsideration will also be denied as moot with the resolution of the jurisdictional question in Defendant's favor and Defendant's Motion to Seal will be granted.

An appropriate Order consistent with this Opinion will be entered.

Date: July 22, 2022                /s Noel L. Hillman
At Camden, New Jersey              NOEL.L. HILLMAN, U.S.D.J.